## In re Anonymous No. 51 D.B. 80

Disciplinary Board Docket no. 51 D.B. 80.

ELLIOTT, *Board Member,* June 16, 1981—
Pursuant to Pa.R.D.E. 208(d), the Disciplinary
Board of the Supreme Court of Pennsylvania
(board) submits its findings and recommendations
to your honorable court with respect to the above-
captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

The Office of Disciplinary Counsel filed a petition
for discipline against respondent on September 26,
1980. The petition alleged violations of D.R.
1-102(A)(4) and (6), D.R. 2-110(A)(3), D.R.
6-101(A)(3), and D.R. 9-102(B)(4), in connection
with three separate incidents. On February 19,
1981, respondent entered into a stipulation as to the
truth of all of the material facts alleged in the peti-
tion. A hearing was held before a hearing commit-
tee on March 13, 1981, at which respondent ap-
peared, unrepresented by counsel, and offered no
defenses to the charges. The opinion of the hearing
committee was filed on March 25, 1981, in which
the committee found all of the alleged disciplinary
violations and recommended that respondent be
suspended from practice for one year. The commit-

tee further recommended that the suspension be expedited in order to protect the public from respondent's unfitness to practice law.

## II. STATEMENT OF FACTS

The facts of this case are not in controversy, respondent having stipulated to all material allegations in the petition for discipline. The board therefore adopts those allegations, as did the hearing committee, as findings of fact.

A. Charge I—

On September 7, 1979, respondent was retained by [A] for the purpose of obtaining a divorce. [A] paid respondent a fee of $500. (Petition for Discipline, ¶3, hereinafter "Pet.") For several months thereafter, [A] periodically inquired as to the status of his case. (Pet. ¶4 and ¶5.) [A] was led to believe by respondent that respondent was prosecuting his case while, in fact, respondent had done nothing at all. (Pet. ¶5 and ¶7.) Finally, [A] himself checked with the prothonotary's office and discovered that no divorce action had yet been filed. (Pet. ¶6.)

Based upon the information from the prothonotary's office, [A] discharged respondent and, via new counsel demanded return of the $500 fee. (Pet. ¶7 and ¶9, Exhibit "6".) Respondent failed to return the fee.

[A] then filed a private criminal complaint against respondent. (Pet. ¶10.) The district attorney wrote to respondent advising him of the criminal complaint and asking him to report his intentions. (Pet. ¶11.) Even the district attorney received no response from respondent and accordingly approved the criminal complaint for prosecution. (Pet. ¶12.)

At a hearing on the criminal complaint regarding respondent's failure to return the fee, respondent promised to pay the $500 to [A] promptly and

further promised to pay [A] $320 in addition for damages caused by respondent's failure to prosecute the divorce case in a timely manner. (Pet. ¶13, Exhibit "5".) Neither amount had been paid at the time respondent appeared before the hearing committee. (Transcript at 19, hereinafter "Tr.".)

B. Charge II—

On June 8, 1979, [B] retained respondent to pursue adoption proceedings. [B] paid respondent $265. (Pet. ¶18 and ¶19). Respondent took no action on the matter and never initiated adoption proceedings notwithstanding various assurances that he would take care of the matter. (Pet. ¶20.) After nine months, [B] discharged respondent. (Pet. ¶21.) Demand was made for the return of the $265 fee and respondent agreed to return it. (Pet. ¶22.) This amount had not been paid when respondent appeared before the hearing committee. (Tr. at 19.)

C. Charge III—

In January 1979, respondent was retained by [C] to represent the estate of her deceased mother. [C] tendered a fee of $600. After nine months had passed, [C] received a notice from the Pennsylvania Department of Revenue concerning a failure to file an inheritance tax return. [C] then attempted, without success, to contact respondent. She then referred the matter to the [ ] County Bar Association whose inquiries respondent also failed to answer. Disciplinary Counsel was then contacted. (Exhibit "9".)

This matter resulted in an informal admonition by Disciplinary Counsel. At that time, respondent agreed to put together a file on the estate and send it to [C] as well as to refund $400 of the $600 fee. (Pet. ¶25.) When respondent appeared before the hearing committee, he had neither paid the agreed upon refund of $400 to [C] nor had he sent her the estate file.

## III. DISCUSSION

The board agrees with the conclusion of the hearing committee that "the admitted facts display respondent's complete indifference and possibly even total ignorance of his professional obligation in the representation of his clients" and that "respondent has exhibited a total unfitness to practice law."

Respondent has demonstrated a propensity to undertake a representation, accept a fee and then do nothing in furtherance of his clients' interests. After a substantial amount of time has passed, upon demand, he then promises to return the fee but lacks the financial responsibility to perform his promises. This pattern of conduct prejudices his clients in two ways. First, the clients risk the forfeiture of substantial rights by the respondent's failure to act on their cases and by the passage of time until such failure becomes apparent. Second, the clients pay money in anticipation of services. Respondent neither performs the services nor returns the money. This conduct falls within the plain proscription of D.R. 1-102(A)(6), D.R. 2-110(A)(3), and D.R. 6-101(A)(3). The board finds clear violations of all three disciplinary rules.

Almost as striking as the disciplinary violations is the apparent apathy with which respondent views his legal practice and these proceedings. When informed by the district attorney of a criminal complaint against him, he failed to respond. Respondent appeared before the hearing committee unrepresented and offered no excuses for his conduct or defenses to the charges. Respondent has virtually no present legal practice; he has no office; his former office has been padlocked by his landlord because of substantial rent arrearages; and he remains financially unable to repay his obligations to his clients.

There is no basis upon which to conclude that respondent's conduct will be different in the future. In fact, the record indicates that respondent's pattern of conduct is very likely to repeat in the future to the detriment of unwitting clients. The board concludes that respondent presents one of the rare instances where the board's duty to protect the public from totally incompetent and irresponsible practitioners warrants the imposition of the harshest sanction.

## IV. RECOMMENDATION

The board respectfully recommends to your honorable court that respondent [ ] be disbarred.

### ORDER [OF PENNSYLVANIA SUPREME COURT]

O'BRIEN, *C.J.*, And now, September 25, 1981, the recommendation of the Disciplinary Board dated June 16, 1981, is accepted; and it is ordered that respondent be and he is disbarred from the Bar of this Commonwealth, and he shall comply with all the provisions of Rule 217 of the Pennsylvania Rules of Disciplinary Enforcement.

Mrs. Neuman did not participate in the adjudication.